**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

SHAKA SHABAZZ,
  *Plaintiff*,

  v.                                         No. 3:25-cv-00060 (VAB)

CHRISTOPHER BRUNELLE, *et al.*,
  *Defendants.*

**INITIAL REVIEW ORDER**

Shaka Shabazz ("Plaintiff"), a sentenced inmate at Willard-Cybulski Correctional

Institution, has filed a *pro se* Second Amended Complaint under 42 U.S.C. § 1983 alleging that

prison officials at New Haven Correctional Center ("NHCC") violated his rights under federal

and state law by requiring him to use an unsanitary shower without shower shoes and then

refusing to provide him needed medical care when his feet became infected.

For the following reasons, Mr. Shabazz's Fourteenth Amendment claims related to his

conditions of confinement, denial of hygiene products, and deliberate indifference to serious

medical needs and his First Amendment retaliation claim may proceed.

All other claims are **DISMISSED**.

I.    **FACTUAL AND PROCEDURAL BACKGROUND[1]**

Mr. Shabazz filed his original Complaint, ECF No. 1, while incarcerated at NHCC. *See*

ECF No. 1-1 (envelope bearing NHCC address). Before the Court conducted its initial review of

the Complaint under 28 U.S.C. § 1915A(a), Mr. Shabazz filed two Amended Complaints, ECF

Nos. 12, 14, and a Motion to Amend Complaint. Mot. to Amend., ECF No. 15. The Court denied

---

[1] While the Court does not set forth all the facts alleged in Mr. Shabazz's Second Amended Complaint, it
summarizes his basic factual allegations here to give context to its ruling below.

the motion as moot because Mr. Shabazz was permitted to file an Amended Complaint before service under Fed. R. Civ. P. 15(a)(1). *See* Order, ECF No. 17 (April 25, 2025). The Court noted that Mr. Shabazz's Second Amended Complaint, ECF No. 14, would be considered the operative pleading, and that the Court would conduct its initial review of the Second Amended Complaint under 28 U.S.C. § 1915A(a). *Id.*

Because "an amended pleading ordinarily supersedes the original and renders it of no legal effect," *Pettaway v. Nat'l Recovery Sols., LLC*, 955 F.3d 299, 303 (2d Cir. 2020) (quotation omitted), the Court will consider only the allegations alleged in the Second Amended Complaint in determining the factual basis for Mr. Shabazz's claims. *See Dinh v. Doe*, No. 3:24-CV-1042 (OAW), 2024 WL 3343006, at *3 (D. Conn. July 9, 2024) (noting that "[a]n amended complaint, if filed, will completely replace the original complaint, and the court will not consider any allegations made in the original complaint while evaluating any amended complaint.").

Mr. Shabazz was a pre-trial detainee at NHCC on August 28, 2024.[2] Sec. Am. Compl., ECF No. 14 ¶¶ 10–11. Prison officials allegedly told Mr. Shabazz that he had to shower daily after arriving at NHCC or face disciplinary action or segregation. *Id.* ¶ 11. According to Mr. Shabazz, the showers at NHCC allegedly contained "inmate urination," "spit," "nose snot," "reproductive fluid," "human excrement," blood from "intravenous drug users," and fungus. *Id.* ¶¶ 43–46. The showers allegedly were "never cleaned after each inmate shower[ed]." *Id.* ¶ 47.

When Mr. Shabazz allegedly went to take his first shower, he allegedly asked a correctional officer for shower shoes. *Id.* ¶ 12. The officer allegedly told Mr. Shabazz that shower shoes were only available for purchase through the prison commissary. *Id.* Mr. Shabazz

---

[2] Plaintiff only specifies that the following events began on "August, 28," ECF No. 14 ¶ 10, but he later refers to a conversation with the warden in "September of 2024," *id.* ¶ 27, so the Court will presume that all events alleged in the Amended Complaint occurred in 2024.

allegedly could not afford to purchase shower shoes, and allegedly had to take his daily showers barefoot, until he could afford them. *Id.* ¶ 13. Mr. Shabazz allegedly felt "shock[ed], digust[ed], degraded, dehumanized" and experienced depression resulting from having to shower barefoot. *Id.* ¶ 14.

Mr. Shabazz allegedly soon developed an infection from showering barefoot. *See id.* ¶ 13. This infection allegedly exposed Mr. Shabazz to bacteria in the shower. *See id.* Eventually, Mr. Shabazz also allegedly developed a foot fungus disease. *See id.* ¶ 17. The foot fungus disease, in turn, allegedly caused open wounds in between Mr. Shabazz's toes, further exposing his feet to other bacteria and pathogens, including Hepatitis A and B, and AIDS. *See id.* ¶¶ 18–20, 23.

Mr. Shabazz allegedly discussed his lack of shower shoes and medical care with the Warden Christopher Brunelle, *id.* ¶ 5, in September of 2024. *Id.* ¶ 27. Warden Brunelle allegedly told Mr. Shabazz that no inmate receives shower shoes at NHCC, unless they buy them from the commissary. *Id.* Warden Brunelle allegedly told Mr. Shabazz that he was "a disciplinary problem" in the past and that Warden Brunelle "was not going to do anything special for him." *Id.* ¶ 28. As to Mr. Shabazz's foot fungus, Warden Brunelle allegedly told Mr. Shabazz that he was "well aware" that showering barefoot causes health issues, but he would not order Mr. Shabazz to be seen by medical staff because "to[o] many inmates get it at his facility" and Mr. Shabazz could be treated at his next facility. *Id.* ¶ 29.

Later that month, Mr. Shabazz also allegedly spoke with the Deputy Warden of Support Services[3] about his lack of shower shoes. *Id.* ¶ 30. The Deputy Warden of Support Services

---

[3] Mr. Shabazz does not identify the Deputy Warden of Support Services by name in the body of his complaint. He names a Deputy Warden Marcin Domitrz and Deputy Warden of Administration Morgan Suess in his list of defendants, *id.* ¶¶7–8, but because Mr. Shabazz does not specify the gender of the Deputy Warden of Support Services, *see id.* ¶ 30 (using the pronoun of "s/he" to refer to the Deputy Warden of Support Services) or Deputy

allegedly was "aware that indigent new admittance prisoners are showering b[are]foot" and that doing so caused Athlete's Foot and toenail fungus. *Id.* But the Deputy Warden of Support Services allegedly stated that "it might go away," though AIDS, Hepatis, and other "serious bacteria" would not. *Id.* The Deputy Warden of Support Services allegedly told Mr. Shabazz that inmates did not get shower shoes, unless they bought them from the commissary. *Id.* ¶ 32. The Deputy Warden of Support Services also allegedly told Mr. Shabazz that Warden Brunelle told her about Mr. Shabazz's request for medical attention, but the Deputy Warden of Support Services allegedly "was not going to go over his boss and send [Mr. Shabazz] to medical." *Id.* ¶ 31. The Deputy Warden of Support Services allegedly told Mr. Shabazz that he could buy medication for Athlete's Foot at the commissary, but the commissary allegedly did not sell medication for toenail fungus. *Id.* ¶ 33.

In the same month, Mr. Shabazz also allegedly spoke with the Deputy Warden of Operations regarding his shower shoes and medical treatment for Athlete's Foot and toenail fungus. *Id.* ¶ 34. The Deputy Warden of Operations allegedly told Mr. Shabazz that she knows that inmates do not get shower shoes and must shower barefoot. *Id.* The Deputy Warden of Operations allegedly told Mr. Shabazz that he could only obtain shower shoes by buying them at the commissary and that he may or may not get AIDS or "flesh[-]eating" bacteria from the showers. *Id.* ¶ 35. The Deputy Warden of Operations allegedly told Mr. Shabazz that his medical condition may go away on its own. *Id.* ¶ 36. The Deputy Warden of Operations allegedly told Mr. Shabazz that he or she was done talking about the issue because he or she "knows inmates get the condition" but would not do anything about it. *Id.* The Deputy Warden of Operations

---

Warden of Operations described below, *see id.* ¶ 34 (also using the "s/he" pronoun to refer to the Deputy Warden of Operations), and because the names "Marcin" and "Morgan" do not clearly suggest the gender of those deputy wardens listed as defendants, the Court cannot easily conclude that Deputy Wardens Domitrz and Suess correspond to the Deputy Warden of Support Services and Deputy Warden of Operations.

allegedly told Mr. Shabazz that he or she was not sending Mr. Shabazz to the medical

department because everything Mr. Shabazz needed was in the commissary. *Id.* ¶ 37.

Mr. Shabazz also allegedly spoke to Supervising Nurse Jane Doe in September of 2024 in

response to Mr. Shabazz's request for medical care for his Athlete's Foot and toenail fungus. *Id.*

¶ 39. Nurse Doe allegedly acknowledged that many new inmates shower barefoot and "often"

become infected. *Id.* She allegedly told Mr. Shabazz that the practice of showering without

shower shoes was "disgusting," "unhealthy," and caused "foot fungus disease" and "nail fungus

disease." *Id.* ¶ 40. Nurse Doe also allegedly told Mr. Shabazz that Warden Brunelle told her

about Mr. Shabazz's medical condition, but Warden Brunelle allegedly "directed [her] to let

Plaintiff suffer." *Id.* Nurse Doe allegedly told Mr. Shabazz that even without Warden Brunelle's

instructions, he would not get medical treatment because Mr. Shabazz was "always writing

medical request[s] and [g]rievance[s] on her [and] her department." *Id.* ¶ 41. Nurse Doe

allegedly told Mr. Shabazz to buy shower shoes and foot fungus cream from the commissary and

to buy Aspirin or Tylenol from the commissary for his toenail fungus. *Id.* Nurse Doe also

allegedly told Mr. Shabazz to "drink lots of water." *Id.*

Mr. Shabazz later allegedly bought medical cream from the commissary, but it allegedly

irritated his skin, made it burn, and made the skin peel off in thick layers. *Id.* ¶ 41(A). Mr.

Shabazz allegedly stopped using the cream and "continued to use the system defendants

provided him," but it did not work. *Id.*    ¶ 41(B). Mr. Shabazz still allegedly suffers from

Athlete's Foot, toenail fungus, non-stop itching, burning skin, loss of sleep, toenail discoloration,

physical and mental pain, loss of appetite, and depression. *Id.* ¶ 48.

## II.    STANDARD OF REVIEW

Under 28 U.S.C. § 1915A(b), district courts must review prisoners' civil complaints against governmental actors and *sua sponte* "dismiss . . . any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also Liner v. Goord*, 196 F.3d 132, 134 & n.1 (2d Cir. 1999) (explaining that, under the Prisoner Litigation Reform Act, *sua sponte* dismissal of frivolous prisoner complaints is mandatory); *Tapia-Ortiz v. Winter*, 185 F.3d 8, 11 (2d Cir. 1999) ("Section 1915A requires that a district court screen a civil complaint brought by a prisoner against a governmental entity or its agents and dismiss the complaint *sua sponte* if, *inter alia,* the complaint is 'frivolous, malicious, or fails to state a claim upon which relief may be granted.'" (quoting 28 U.S.C. § 1915A)).

Rule 8 of the Federal Rules of Civil Procedure requires that a plaintiff plead only "a short and plain statement of the claim showing that the pleader is entitled to relief," *see* Fed. R. Civ. P. 8(a)(2), to provide the defendant "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level" and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570. A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Although the Federal Rules of Civil Procedure do not require "detailed factual allegations," a complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual

6

enhancement." *Twombly*, 550 U.S. at 555–57. Plausibility at the pleading stage is nonetheless

distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy

judge that actual proof of [the claim] is improbable, and . . . recovery is very remote and

unlikely." *Id*. at 556 (internal quotation marks omitted).

Complaints filed by *pro se* plaintiffs, however, "must be construed liberally and

interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d

399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F. 3d 471, 474 (2d

Cir. 2006)) (internal quotation marks omitted); *see also Tracy v. Freshwater*, 623 F. 3d 90, 101–

02 (2d Cir. 2010) (discussing the "special solicitude" courts afford *pro se* litigants).

## III.    DISCUSSION

"The strongest arguments . . . suggest[ed]" by Mr. Shabazz's Amended Complaint, *Sykes*

*v. Bank of Am.*, 723 F.3d at 403, are claims related to: (1) Mr. Shabazz's conditions of

confinement; (2) prison officials' alleged denial of hygeine products; (3) prison officials' alleged

deliberate indifference to Mr. Shabazz's serious medical needs; (4) prison officials' alleged

retaliation against Mr. Shabazz for filing grievances, (5) equal protection related to other inmates

receiving shower shoes, and (6) intentional infliction of emotional distress under Connecticut

law. The Court analyzes each in turn.

### A.  The Conditions of Confinement Claim[4]

"A pretrial detainee's claims of unconstitutional conditions of confinement are governed

by the Due Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual

---

[4] Mr. Shabazz's Second Amended Complaint suggests a conditions of confinement claim related to the shower conditions. Mr. Shabazz is now a sentenced prisoner, *see* DOC, *Inmate Information*, https://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=168041 (last accessed May 5, 2025), but he was a pretrial detainee when the events in question occurred. Sec. Am. Compl., ECF No. 14 ¶ 4. Thus, his conditions of confinement claim is analyzed under the Fourteenth Amendment, rather than the Eighth Amendment. The Court may take judicial notice of this website. *See Barletta v. Quiros*, No. 3:22CV01110(SALM), 2023 WL 2687285, at *1 n.1 (D. Conn. Mar. 29, 2023) (taking judicial notice of DOC inmate locator website).

Punishments Clause of the Eight Amendment." *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017). To state a Fourteenth Amendment conditions of confinement claim, a pretrial detainee must allege facts satisfying two elements, one objective and one subjective. *See id.*

The objective element requires "showing that the challenged conditions were sufficiently serious to constitute objective deprivations of the right to due process[.]" *Id.* "[T]o establish an objective deprivation, 'the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health,' which includes the risk of serious damage to 'physical and mental soundness[.]'" *Id.* at 30 (quoting *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013); *LaReau v. MacDougall*, 473 F.2d 974, 978 (2d Cir. 1972)). "There is no 'static test' to determine whether a deprivation is sufficiently serious; instead, 'the conditions themselves must be evaluated in light of contemporary standards of decency." *Id.* (quoting *Blissett v. Coughlin*, 66 F.3d 531, 537 (2d Cir. 1995) (citation omitted)).

Conditions may be sufficiently serious on their own, such as when prisoners are "deprived of their basic human needs—*e.g.,* food, clothing, shelter, medical care, and reasonable safety" or when they are "exposed to conditions that pose an unreasonable risk of serious damage to [their] future health." *Id.* (quoting *Jabbar v. Fischer*, 683 F.3d 54, 57 (2d Cir. 2012)). Conditions may also be considered in the aggregate so long as they "have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise." *Walker*, 717 F.3d at 125 (quoting *Wilson v. Seiter*, 501 U.S. 294, 304 (1991)).

"Unsanitary conditions, especially when coupled with other mutually enforcing conditions, such as poor ventilation and lack of hygienic items (in particular, toilet paper), can rise to the level of an objective deprivation." *Darnell*, 849 F.3d at 30. "[U]nsanitary conditions of confinement must be assessed according to two components, severity and duration, on a case-by-

8

case basis." *Id.* The Second Circuit "has been reluctant to impose bright-line durational or severity limits in conditions of confinement cases, and has never imposed a requirement that pretrial detainees show that they actually suffered from serious injuries." *Id.* at 31.

The subjective element requires "showing that the officer acted with at least deliberate indifference to the challenged conditions." *Id.* at 29. Establishing deliberate indifference to the challenged conditions requires showing "that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Id.* at 35.

Mr. Shabazz has alleged facts satisfying the objective and subjective elements of this claim for purposes of initial review. As to the objective element, the allegedly unsanitary conditions—uncleaned showers containing bodily fluids capable of carrying pathogens, Sec. Am. Compl., ECF No. 14 ¶¶ 43–45—were sufficiently severe. *Cf. May v. DeJesus*, No. 3:06CV1888AWT, 2010 WL 1286800, at *4 (D. Conn. Mar. 30, 2010) (accepting concession that "unsanitary conditions, including lack of access to toilet paper or a properly functioning toilet, may constitute a severe deprivation of a basic human need.") (citing *LaReau v. MacDougall,* 473 F.2d 974, 978 (2d Cir. 1972); *Wright v. McMann,* 387 F.2d 519, 522, 526 (2d Cir. 1967)).

And, because Mr. Shabazz had to shower in these unsanitary showers each day for "days[,] weeks[,] then months," Sec. Am. Compl., ECF No. 14 ¶¶ 11, 41(A), Mr. Shabazz has alleged facts suggesting that he was exposed to the severe unsanitary conditions for a sufficient duration. *See Wright*, 387 F.3d at 522, 526 (33 days was sufficient duration in unsanitary cell). The unsanitary conditions of the shower, "coupled with other mutually enforcing conditions,"

*Darnell*, 849 F.3d at 30, such as prison officials' alleged refusal to provide Mr. Shabazz with shower shoes or medical care after his feet became infected, Sec. Am. Compl., ECF No. 14 ¶¶ 12, 29, "rise[s] to the level of an objective deprivation." *Darnell*, 849 F.3d at 30. *Cf. Schlosser v. Walker*, No. 3:20-CV-433 (SRU), 2020 WL 4818563, at *5 (D. Conn. Aug. 17, 2020) (recognizing that, "[i]n *Darnell*, the Court specifically held that a combination of prison conditions, which included 'inoperable toilets and filthy cells' as well as verbal abuse, could rise to the level of an objective constitutional deprivation." (quotation omitted)).

As to the subjective element, Mr. Shabazz has alleged facts suggesting that Warden Brunelle "acted intentionally to impose the alleged condition," *Darnell*, 849 F.3d at 35, by telling Nurse Doe to "to let Plaintiff suffer." Sec. Am. Compl., ECF No. 14 ¶ 40. At minimum, though, prison officials allegedly acted recklessly under the standard set forth in *Darnell,* 849 F.3d at 35, by acknowledging the risk that the unsanitary showers posed to Mr. Shabazz's health and choosing to do nothing to mitigate the risk. *See, e.g.*, Sec. Am. Compl., ECF No. 14 ¶¶ 27–29 (Warden Brunelle's refusal to provide Mr. Shabazz with shower shoes or allow him to be seen by medical staff despite being "well aware" that showering barefoot causes health issues); *id.* ¶¶ 30–32 (Deputy Warden of Support Services' refusal of same despite being "aware that indigent new admittance prisoners are showering b[are]foot" and that doing so caused Athlete's Foot and toenail fungus); *id.* ¶¶ 34–37 (Deputy Warden of Operations' refusal of same despite "know[ing] inmates get the [foot] condition" from the shower); *id.* ¶¶ 39–41 (Nurse Doe's refusal of same despite that knowing that many new inmates shower barefoot and "often" become infected and that showering without shower shoes was "disgusting," "unhealthy," and caused "foot fungus disease" and "nail fungus disease."). These allegations thus are sufficient to establish the subjective element. *Cf. Devalda v. Faucher*, No. 3:21-CV-1274(OAW), 2022 WL 356427, at *5

(D. Conn. Feb. 7, 2022) (subjective element satisfied where prison officials knew of unsanitary prison conditions conducive to transmitting COVID-19 but failed to take actions to mitigate the risk of transmission).

Accordingly, because Mr. Shabazz has pled sufficient facts to establish both elements of a Fourteenth Amendment conditions of confinement claim, this claim may proceed.

### B. The Denial of Hygiene Products Claim

 "Inmates have a right to sanitary living conditions and the necessary materials to maintain adequate personal hygiene." *Baltas v. Jones*, No. 3:21CV469 (MPS), 2021 WL 6125643, at *9 (D. Conn. Dec. 27, 2021) (citing *Walker,* 717 F.3d at 127 (citing cases for the proposition that "the failure to provide prisoners with toiletries and other hygienic materials may rise to the level of a constitutional violation"); *Townsend v. Sweet*, No. 3:19-cv-580(SRU), 2019 WL 4139469, at *7 (D. Conn. Aug. 30, 2019) (permitting Eighth Amendment conditions of confinement claim based on denial of hygiene items and clean clothing for several days to proceed on initial review); *Atkins v. County of Orange*, 372 F. Supp. 2d 377, 406 (S.D.N.Y. 2005) ("The failure to regularly provide prisoners with . . . toilet articles including soap, razors, combs, toothpaste, [and] toilet paper ... constitutes a denial of personal hygiene and sanitary living conditions."); *but see Conley v. Aldi*, No. 3:18-cv-824(VAB), 2020 WL 1333501, at *5 (D. Conn. Mar. 23, 2020) (holding that inability to "practice" personal hygiene for a three-day period and a four-day period failed to state Eighth Amendment violation and noting that occasional or temporary denials of hygiene items does not constitute deprivation of basis human need)).

Mr. Shabazz's Second Amended Complaint suggests a denial of hygiene products claim related to prison officials' refusal to provide him with shower shoes.

Shower shoes, like toilet articles, are necessary to maintaining adequate personal hygiene in unsanitary showers. *See, e.g.*, *Gonzalez v. Mullen*, 446 F. App'x 17, 18 (9th Cir. 2011) (holding that "dismissal of [plaintiff's] Eighth Amendment claim concerning shower shoes was improper at this early stage because [plaintiff's] allegations that his inability to obtain shower shoes put him at risk of exposure to serious bacteria were not frivolous.") (citing *Keenan v. Hall*, 83 F.3d 1083, 1091 (9th Cir. 1996) (indigent inmates have the right to personal hygiene supplies)). And the alleged deprivation of shower shoes was not occasional or temporary. *See Conley*, 2020 WL 1333501, at *5.

Accordingly, this claim may proceed.

### C. The Deliberate Indifference to Serious Medical Needs Claim

A claim that a prison official has acted with deliberate indifference under the Fourteenth Amendment involves analysis of two elements: (1) an objective element, which requires a plaintiff to show that "the challenged conditions were sufficiently serious to constitute objective deprivations of the right to due process"; and (2) a subjective or "*mens rea*" element, which requires a plaintiff to show that the defendant "acted with at least deliberate indifference to the challenged conditions." *Darnell*, 849 F.3d at 29.

With respect to the first element of a deliberate indifference claim, the plaintiff must show that the conditions he experienced "either alone or in combination, pose[d] an unreasonable risk of serious damage to his health." *Id.* at 30 (quoting *Walker*, 717 F.3d at 125). With respect to the second element, "the pretrial detainee must prove that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or

safety." *Id.* at 35. Negligence is insufficient to satisfy this element. *Id.* at 36 (detainee must show that defendant acted recklessly or intentionally, not merely negligently).

Mr. Shabazz's Second Amended Complaint suggests a deliberate indifference to serious medical needs claim related to prison officials' refusal to provide him with medical care for his foot condition.

As to the objective element, Mr. Shabazz alleges that he contracted Athlete's Foot and toenail fungus from the lack of shower shoes. *See* Sec. Am. Compl., ECF No. 14 ¶ 48. Other courts in this District have observed that "[n]o reported cases in this circuit have considered whether toenail fungus is a serious medical need." *Henderson v. Caplan*, No. 3:23-CV-530 (SRU), 2023 WL 4564418, at *3 (D. Conn. July 17, 2023). But some courts in this Circuit have concluded that "toe fungus" was not a serious medical need, *see, e.g.*, *Reyes v. Wenderlich*, No. 14-CV-6338-FPG, 2018 WL 1210892, at *7 (W.D.N.Y. Mar. 8, 2018), *aff'd*, 779 F. App'x 55 (2d Cir. 2019), while other courts in this District have assumed that toenail fungus can be a serious medical need if it causes "associated pain," including "burning and stinging." *Henderson*, 2023 WL 4564418, at *3. Because Mr. Shabazz alleges that his Athlete's Foot and toenail fungus caused non-stop itching, burning skin, loss of sleep, toenail discoloration, physical and mental pain, loss of appetite, and depression, Sec. Am. Compl., ECF No. 14 ¶ 48, the Court will assume, for purposes of initial review, that Mr. Shabazz's medical need was sufficiently serious to satisfy the objective element. *See Henderson*, 2023 WL 4564418, at *3.

As to the subjective element, Mr. Shabazz may satisfy this element by alleging facts suggesting that "prison officials intentionally den[ied] access to medical care . . . ." *Todaro v. Ward*, 565 F.2d 48, 52 (2d Cir. 1977) (citing, *inter alia*, *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976). Mr. Shabazz maintains that Warden Brunelle, the Deputy Warden of Support Services,

the Deputy Warden of Operations, and Supervising Nurse Jane Doe all intentionally denied Mr.

Shabazz medical care after he brought his foot condition to their attention. *See*, Sec. Am.

Compl., ECF No. 14 ¶¶ 29, 31, 37, 41. As a result, Mr. Shabazz has alleged sufficient facts to

satisfy this element.

Accordingly, having sufficiently alleged facts as to both the objective and subjective

elements of a deliberate indifference claim, this claim may proceed.

### D. The Retaliation Claim

To plead a retaliation claim, an inmate must plausibly allege: (1) that he engaged in

protected speech or conduct, (2) that the defendant took adverse action against the plaintiff, and

(3) that the adverse action was the result of a retaliatory motive, i.e., that there was a causal

connection between the protected conduct and the adverse action. *Dolan v. Connolly*, 794 F.3d

290, 294 (2d Cir. 2015). The Second Circuit has "instructed district courts to approach prisoner

retaliation claims with skepticism and particular care, because virtually any adverse action taken

against a prisoner by a prison official—even those otherwise not rising to the level of a

constitutional violation—can be characterized as a constitutionally proscribed retaliatory

act." *Id.* at 295.

Mr. Shabazz alleges that Nurse Doe told him that he would not get medical treatment

because Mr. Shabazz was "always writing medical request[s] and [g]rievance[s] on her [and] her

department." Sec. Am. Compl., ECF No. 14 ¶ 41. Grievances are considered protected

speech, *see Walker v. Senecal*, 130 F.4th 291, 298 (2d Cir. 2025) (noting that "the filing of a

lawsuit or a grievance is protected conduct"), in satisfaction of the first element. Denial of

medical treatment is an adverse action, in satisfaction of the second element. *See, e.g., Benjamin

v. Pillai*, No. 3:16-CV-1721 (JAM), 2016 WL 6963027, at *4 (D. Conn. Nov. 28, 2016)

(concluding "deni[al] [of] medical treatment . . . is an adverse action."). And Nurse Doe's denial of medical treatment resulted from a retaliatory motive, in satisfaction of the third element. *See id.* (concluding that doctor's threat to deny medical treatment if plaintiff continued to file grievances established retaliatory motive).

Accordingly, this claim may proceed.

**E. The Equal Protection Claim**

Under the Equal Protection Clause of the Fourteenth Amendment, "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. To state a claim under the Fourteenth Amendment, there are two "distinct pathways for proving a non-class-based Equal Protection violation." *Hu v. City of New York*, 927 F.3d 81, 93 (2d Cir. 2019).

The first pathway, "[a] selective enforcement claim[,] requires a demonstration that a person was treated differently than others similarly situated based on impermissible considerations, such as race or religion." *Caldwell v. Geronimo*, No. 22-1866, 2023 WL 6381292, at *2 (2d Cir. Oct. 2, 2023) (summary order). To prevail on a selective enforcement claim, a plaintiff must prove that "(1) the person, compared with others similarly situated, was selectively treated, and (2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the person." *Hu*, 927 F.3d at 91 (quoting *Zahra v. Town of Southold*, 48 F.3d 674, 683 (2d Cir. 1995)).

The second pathway, "a class of one" claim, "also requires a comparator and a lack of rational basis for the differential treatment." *Caldwell*, 2023 WL 6381292, at *2. To prevail on a class of one claim, a plaintiff must prove that he is "*prima facie* identical" to a comparator by

showing that: "(i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake." *Hu*, 927 F.3d at 92 (quotation omitted).

Mr. Shabazz's allegation that prisoners at other prison facilities receive shower shoes while prisoners at his prison facility do not, *see* Sec. Am. Compl., ECF No. 14 ¶ 24, is insufficient to state a selective enforcement claim because Mr. Shabazz has alleged no facts suggesting that the disparate treatment of prisoners at NHCC and prisoners at other DOC prisons was motivated by any of the purposes described in *Hu*, 927 F.3d at 91. *See Westbrook v. City of Meriden*, No. 3:10-CV-1329 TPS, 2013 WL 172992, at *4 (D. Conn. Jan. 16, 2013) (citing *Yale Auto Parts v. Johnson,* 758 F.2d 54, 61 (2d Cir. 1985)) (concluding that "[i]n the absence of the essential allegation that others were treated differently based on an unlawful consideration, the plaintiff's complaint is wholly insufficient to state an equal protection claim.").

The Second Circuit has held that "class-of-one plaintiffs must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves." *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006). In such cases, "the existence of persons in similar circumstances who received more favorable treatment than the plaintiff is offered to provide an inference that the plaintiff was intentionally singled out for reasons that so lack any reasonable nexus with a legitimate governmental policy that an improper purpose— whether personal or otherwise—is all but certain." *Neilson v. D'Angelis*, 409 F.3d 100, 105 (2d Cir. 2005), *overruled on other grounds by Appel v. Spiridon*, 531 F.3d 138 (2d Cir. 2008).

Mr. Shabazz's allegations do not suggest that he was "intentionally singled out" for an "improper purpose." *Id.* As a result, the allegations in Mr. Shabazz's complaint are also insufficient to state an equal protection claim on a class-of-one theory. *Cf. Jackson v. Burke*, 256 F.3d 93, 96 (2d Cir. 2001) (affirming dismissal of class-of-one equal protection claim alleging plaintiff "was intentionally singled out for treatment different from that accorded other prisoners for no legitimate governmental reason" because plaintiff "failed to adduce even the slightest evidence to support his claim that the destruction of his mail was intentionally directed just at him, as opposed, e.g., to being an accident or a random act of destruction.").

Accordingly, Mr. Shabazz's equal protection claim will be dismissed for failure to state a claim upon which relief may be granted. 28 U.S.C. § 1915A(b)(1).

### F.  The Intentional Infliction of Emotional Distress Claim[5]

When federal and state law claims are brought in a single suit in federal court, federal courts may exercise supplemental jurisdiction over the state law claim. *See* 28 U.S.C. § 1367(a).

To state a claim for intentional infliction of emotional distress under Connecticut law, a plaintiff must allege: "(1) that the [defendants] intended to inflict emotional distress or . . . knew or should have known that emotional distress was the likely result of [their] conduct; (2) that [their] conduct was extreme and outrageous; (3) that [their] conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." *Appleton v. Bd. of Educ.,* 254 Conn. 205, 210 (2000). Courts in this District have recognized that

---

[5] While Mr. Shabazz does not state whether his claim for intentional infliction of emotional distress is brought under state or federal law, *see* Sec. Am. Compl., ECF No. 14 ¶ 70, the Court will assume that it is brought under state law because, unlike his other claims, "claims for intentional infliction of emotional distress are ordinarily brought under state law." *Manson v. Narus*, No. CIV A 3:08CV1(JCH), 2008 WL 4911152, at *4 (D. Conn. Nov. 11, 2008) (citing *Jenkins v. City of New York,* 478 F.3d 76, 81 (2d Cir. 2007) (bringing claims of false arrest and malicious prosecution under section 1983 and state law, but intentional infliction of emotional distress claims under state law only); *Britt v. Garcia,* 457 F.3d 264, 267 (2d Cir. 2006) (bringing claims under section 1983 for Eighth Amendment violations and for intentional infliction of emotional distress under state law)).

"[i]ntentional infliction of emotional distress claims are often pleaded but rarely get very far because liability for this intentional tort has been found 'only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Grigorenko v. Pauls*, 297 F. Supp. 2d 446, 449 (D. Conn. 2003) (quoting *Appleton*, 254 Conn. at 210–211).

Courts in this District have "interpreted the qualification of extreme and outrageous strictly." *Whitaker v. Haynes Const. Co.*, 167 F. Supp. 2d 251, 255 (D. Conn. 2001) (collecting cases). Under this strict standard, the Court cannot conclude that the actions of defendants were sufficiently "extreme and outrageous." *Cf. Williams v. Cmty. Sols., Inc.*, 932 F. Supp. 2d 323, 338 (D. Conn. 2013) (concluding that prison officials' failure to "address[] the needs of sexual assault victims cannot be the basis for an intentional infliction of emotional distress claim because . . . nonfeasance cannot be the basis for an intentional infliction of emotional distress claim under Connecticut law.").

Accordingly, this claim will be dismissed.

### G.  The Personal Involvement Requirement

A plaintiff may only seek damages against defendants in their individual capacities if he shows their "personal involvement" in the alleged constitutional violation. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under  § 1983"). "Personal involvement may be shown by 'direct participation,' which requires in this context 'intentional participation in the conduct constituting a violation of the victim's rights by one who knew of the facts rendering it illegal.'" *Victory v. Pataki*, 814 F.3d 47, 67 (2d Cir. 2016) (quoting *Provost v. City*

*of Newburgh,* 262 F.3d 146, 155 (2d Cir. 2001)). This is true with respect to supervisory officials, as well. *Tangreti v. Bachmann*, 983 F.3d 609, 620 (2d Cir. 2020) (a plaintiff must "plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability" (quotation omitted)).

The Court has permitted Mr. Shabazz's claims for conditions of confinement, denial of hygiene products, deliberate indifference to his serious medical needs, and retaliation to proceed. As to the conditions of confinement claim, it is unclear who caused the showers to be unsanitary. In such cases, "a prison warden is likely the most appropriate official to sue concerning the living conditions of the prisoners he oversees." *Branch v. Guadarrama*, No. 3:24-CV-00536 (MPS), 2024 WL 3342991, at *4 (D. Conn. July 9, 2024) (citing *Rogers v. Lamont*, No. 3:21-CV-1722 (OAW), 2022 WL 16855969, at *4 (D. Conn. Nov. 10, 2022) (where plaintiff sufficiently alleged warden and deputy warden's personal involvement in conditions of confinement claim because they directly oversaw prison facility operations)). The same is true for the "Deputy Warden of Support Services" and the "Deputy Warden of Operations." *See* Sec. Am. Compl., ECF No. 1 ¶¶ 30, 34.

While these deputy wardens may not be the same deputy wardens described in Mr. Shabazz's list of Defendants, *see* note 3, *supra*, the Court will permit this claim to proceed against the two deputy wardens Mr. Shabazz has named as defendants (Deputy Wardens Marcin Domitrz and Morgan Suess) for purposes of initial review. The Court will permit Mr. Shabazz's denial of hygiene products to proceed against the warden and deputy wardens for the same reason. The Court will permit the deliberate indifference to serious medical needs claim to proceed against Warden Brunelle, Deputy Wardens Domitrz and Suess, and Nurse Jane Done. And the Court will permit the retaliation claim to proceed against Nurse Jane Doe.

The Court will not permit any claims to proceed against DOC Commissioner Angel Quiros. Mr. Shabazz's allegations of Commissioner Quiros's personal involvement in the alleged constitutional violations are conclusory and seemingly based on his high position of authority in the prison system. *See* Sec. Am. Compl., ECF No. 14 ¶¶ 23–26. Commissioner Quiros's high position of authority within the DOC is, itself, insufficient to establish personal involvement. *See, e.g. Jordan v. Wright*, No. 3:24-CV-1166 (VAB), 2024 WL 3742767, at *11 (D. Conn. Aug. 9, 2024) (concluding that plaintiff could not establish personal involvement of DOC District Administrator and warden "merely because [they] held a high position of authority." (quoting *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996)).

Accordingly, any claims against Commissioner Quiros are dismissed.

## ORDERS

The Court will permit Mr. Shabazz to pursue damages from Warden Brunelle and Deputy Wardens Domitrz and Suess in their individual capacities on his Fourteenth Amendment conditions of confinement and denial of hygiene products claim. Mr. Shabazz may also pursue damages from Warden Brunelle, Deputy Wardens Domitrz and Suess, and Nurse Jane Doe in their individual capacities on his Fourteenth Amendment deliberate indifference claim. And Mr. Shabazz may pursue damages against Nurse Jane Doe in her individual capacity on his First Amendment retaliation claim.

 All other claims are **DISMISSED**, and all other defendants are terminated.

The Court enters the following orders:

**(1) The Clerk of Court shall** verify the current work address Warden Brunelle and Deputy Wardens Domitrz and Suess with the Department of Correction Legal Affairs Unit. The Clerk of Court shall mail a copy of the Second Amended Complaint, this order, and a waiver of

service of process request packet to these defendants at their confirmed address by **July 25, 2025**. On **August 8, 2025**, the Clerk of Court shall report to the Court on the status of the requests. If a Defendant fails to return the waiver request, the Clerk of Court shall arrange for in-person service by the U.S. Marshals Service and that Defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(2) The Court cannot serve unidentified defendants. To the extent that Mr. Shabazz seeks damages against Nurse Jane Doe, he must file a notice with the Court by **July 25, 2025** indicating the name of Nurse Jane Doe and her current work address. Once received, the Court will serve Nurse Jane Doe with the Second Amended Complaint and this Order. Failure to file a timely notice identifying Nurse Doe by name and providing the Court with her work address will result in dismissal of all claims against her.

(3) **The Clerk of Court shall** send Mr. Shabazz a copy of this Order.

(4) **The Clerk of Court shall** send a courtesy copy of the Second Amended Complaint and this Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(5) Defendants shall file their response to the Second Amended Complaint, either an Answer or a motion to dismiss, by **September 26, 2025**. If Defendants choose to file an Answer, they shall admit or deny the allegations and respond to the cognizable claim recited above. Defendants also may include all additional defenses permitted by the Federal Rules.

(6) Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed by **January 16, 2026**. Discovery requests need not be filed with the court.

(7) All motions for summary judgment shall be filed by **February 20, 2026**.

**(8)** Under Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

**(9)** If Mr. Shabazz changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the court. Failure to do so can result in the dismissal of the case. Mr. Shabazz must give notice of a new address even if he is incarcerated. Mr. Shabazz should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Mr. Shabazz has more than one pending case, he should indicate all the case numbers in the notification of change of address. Mr. Shabazz should also notify Defendants or the attorney for Defendants of his new address.

**(10)** Mr. Shabazz shall utilize the Prisoner E-filing Program when filing documents with the court. Mr. Shabazz is advised that the Program may be used only to file documents with the court. As Local Court rules provide that discovery requests are not filed with the court, discovery requests must be served on Defendants' counsel by regular mail.

**(11)** The Clerk of Court shall immediately enter the District of Connecticut Standing Order Re: Initial Discovery Disclosures concerning cases initiated by self-represented inmates and shall send a copy to Mr. Shabazz.

 **SO ORDERED** at New Haven, Connecticut, this 20th day of June, 2025.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE